IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JOHNNETTA PUNCH, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § C.A. NO. 3:22-cv-37 |
| | § |
| BILL NELSON, Administrator, | § |
| National Aeronautics and Space | § |
| Administration, | § |
| | § JURY TRIAL DEMANDED |
| Defendant. | § |

## PLAINTIFF JOHNNETA PUNCH'S ORIGINAL COMPLAINT

To the Honorable United States District Judge:

COMES NOW, Johnnetta Punch ("Punch" or "Plaintiff"), and files her Original Complaint, complaining of Bill Nelson, Administrator, National Aeronautics and Space Administration (the "Agency" or "Defendant") alleging this is a proceeding for damages to redress the deprivation of rights secured to Punch by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## PARTIES

1. Plaintiff, Johnnetta Punch, is an African-American female who resides in League City, Galveston County, Texas.

2. Defendant, Bill Nelson, Administrator, National Aeronautics and Space Administration, is a governmental agency. Defendant can be served by serving the United States Attorney's Office for the Southern District of Texas at 1000 Louisiana St. Suite 2300, Houston, Texas.

1

3. Plaintiff at all times herein relevant was an employee, de facto employee, or applicant for employment with Defendant.

4. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent or employee of each and every other defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every defendant was acting with the consent, permission, and authorization of each remaining defendant. All actions of each defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other defendant.

## JURISDICTION & VENUE

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(4) and pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

6. The unlawful employment practices described herein were committed in the Southern District of Texas, and, on information and belief, all records relevant to the causes of action alleged in this complaint are kept in the Southern District of Texas. Venue is invoked pursuant to 28 U.S.C. § 1391.

## PROCEDURAL REQUIREMENTS

7. Pursuant to 29 C.F.R. §§ 1614.204, Punch made initial contact with an EEO Counselor on February 8, 2013 reporting allegations of discrimination on the basis of race (African American), sex (female), color (black), and for retaliation for engaging

in protected activity. This matter could not be resolved informally, and pursuant to 29 C.F.R. § 1614.204(c), Punch filed a formal complaint on March 16, 2013, and her claims were formally investigated by an Agency appointed investigator. Following the issuance of the Report of Investigation ("ROI"), Punch did not seek a final agency decision regarding her complaint; instead, she requested a formal hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge. The Administrative Judge issued a decision without a hearing on September 27, 2021. Subsequently, the Agency issued its Final Agency Decision and Order ("FAD") on November 3, 2021. Punch now files this action within ninety (90) days from the date of receiving the FAD. Therefore, Punch has satisfied all procedural requirements necessary to bring this action.

## FACTUAL BACKGROUND

8. Punch is an African American female. In December 2006, Punch was employed with the Agency as a Program Analyst – Cost Estimator/Analyst, GS-343-13 – for the Cost and Schedule Analysis Branch of the Performance Management and Integration Office ("PM&IO") at the Johnson Space Center, NASA located in Houston, Texas. In this role, Punch's direct first-line supervisor was Michael Soots ("Soots"), Manager, PM&IO and her second-line supervisor was Cathy L. Claunch ("Claunch"), who served as the Supervisory AST Technical Resources Manager, PM&IO.

9. Prior to Soots becoming Punch's direct-line supervisor, Punch undoubtedly exhibited a high competency level and proficiency in her work performance. This was

evidenced in the yearly performance appraisals and merit increases Punch received – as recent as April 8, 2012.

10. In May 2012, Punch, notably the only African American female under Soots, noticed a change in her working condition as compared to her similarly situated counterparts outside of her protected classes. Specifically, Punch observed other non-African American and male program analysts were receiving an increased level of technical support to assist with their daily tasks and job functions. Punch's colleagues outside her protected classes further received the assistance of expert analysis from engineers to assist with completing their daily work task and projects. However, Punch did not even have an operable desktop much less receive the same technical or expert support. Accordingly, Punch raised her first complaint of discrimination in May 2012. Instead of properly investigating Punch's claims of discrimination and harassment, the Agency did nothing, further empowering Soots to continue his crusade against Punch.

11. Following her initial discrimination and harassment complaints, the discrimination and harassment directed to Punch did not cease but intensified. Specifically, Punch's non-African American counterparts were afforded a choice in the selection of use for estimating tools when performing their risk-based cost estimates. Each member of the PM&IO team under Soots at the Johnson Space Center, during the relevant period, were permitted to use the SEER suite of estimating tools. However, Soots required Punch to use the Price System and SEER H suite of estimating tools as well as provide credible results without technical engineering support. At the time of Soots' directive for Punch to use this specific set of cost estimating tools, the Price

System suite of estimating tools had not been approved for use or calibrated with historical engineering parameters or cost data necessary to develop a credible risk-based estimate of the Ares 1-X vehicle at the Johnson Space Center facility. Not only did Soots require Punch to use a suite of cost estimating tools that no other Non-African American or male individual on his team was required to use, Soots also required Punch to provide credible results using tools that had not been calibrated with technical engineering parameters from the Ares I-X Space Vehicle at the Johnson Space Center. It is important to note that the Price nor SEER H suite of estimating tools had not been calibrated with historical engineer parameters; therefore, Punch could not have possible provided a credible risk-based cost estimates that Soots required in her 2012/13 performance standard. Furthermore, Soots did not require other non-African American team members to use a particular suite of tools or non-calibrated estimating tools. It was not only evident that Soots was treating Punch differently than other similar situated individuals outside of her protected class, Soots was placing Punch in a position to fail by altering her terms and conditions of employment.

12. Because of the continued disparate treatment and unequal terms and condition of Punch's work environment, Punch complained again to Soots and Vickie Gutierrez ("Gutierrez"), Team Lead – PM&IO. Unsurprisingly, neither Soots nor Gutierrez investigated her complaints nor escalated them for further action. Instead, Soots intensified his retaliatory employment actions against Punch.

13. Specifically, a few weeks following Punch's most recent complaint of discrimination and harassment, Soots informed Punch on December 13, 2012, that he

would be placing her on a Performance Improvement Plan ("PIP"). Soots attempted to guise his retaliatory motivation for placing Punch on a PIP by delaying the PIP's effective date to March 4, 2013.

14. Punch protested the PIP and requested objective metrics that Soots relied on to measure her performance and justify the PIP. However, Soots failed to muster any examples or metrics. Instead, Soots provided a conclusory justification stating Punch failed to provide a risk-based cost estimate and other documentation for the Ares I-X project. It is important to note that other non-African American and male program analysts have had similar workplace deficiencies but were not placed on a PIP. Soots disparate treatment is further illustrated through his admission that he has never put any other non-African American or male employees on a PIP even though performance deficiencies were present. Soots' disparate treatment, his subjective reasoning to support Punch's PIP, and the close proximately of Punch's complaints and the implementation of the PIP are all retaliation factors that militate in Punch's favor.

15. Consequently, Punch contacted the Agency's EEO office to file an informal complaint of discrimination on February 8, 2013. Following her informal complaint, Punch escalated her grievances filing a formal complaint of discrimination on March 16, 2013. True to form, Soots recommended Punch's removal a few months following the filing of her formal EEO complaint of discrimination that cited Soots as one of the responsible parties.

16. None of this mistreatment makes any sense given Punch's almost twenty (20) year exemplary record in federal service but, then again, discrimination and

retaliation are by its very nature irrational. If Soots could see beyond race and gender, he would have treated Punch with respect rather than disdain. Soots would have treated her as a professional colleague rather than a pariah. But, as it stands now, the only African American female on Soots team – who consequently is the only person ever to receive a PIP from him – is unemployed following her complaints of discrimination and for similar conduct committed by non-African American and male counterparts. The discrimination and retaliation could hardly be clearer.

## **CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**
Race Discrimination (Title VII)

17. Plaintiff incorporates by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

18. This is an action for damages arising out of racial discrimination in employment. At all times relevant herein, Plaintiff's job performance was always satisfactory or better.

19. Defendants, as alleged herein, discriminated against Plaintiff as follows: denial of pay, unwarranted disciplinary action, wrongful termination, threats and intimidation, and harassment.

20. As a result of the racial discrimination as described herein, Plaintiff has been held up to great derision and embarrassment by her fellow coworkers, friends, and members of the community. Plaintiff has suffered emotional distress because Defendant has subjected her to disparate treatment and harassment on account of her race – African

American. Plaintiff is informed and believes that Defendant discriminated against her knowing that such discrimination would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proved at the time of trial.

21. Because of the wrongful acts of Defendant as alleged herein, Plaintiff has been and will be required to employ physicians to examine, treat and care for her and will incur additional medical and economic damages in an amount to be proven at the time of trial.

22. As a result of the wrongful conduct as described herein, Plaintiff has been denied employment, denied promotions, and denied raises. As a result, Plaintiff seeks an award of back pay, front pay, and injunctive relief, according to proof at time of trial.

23. In doing the acts set forth above, Defendant acted intentionally, and with a conscious disregard of Plaintiff's right to equal employment opportunities regardless of race. Defendant has acted, and continues to act, with a reckless disregard of its obligations under the law. The Defendant's conduct, as alleged herein, was and is despicable, malicious and oppressive. Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

**SECOND CLAIM FOR RELIEF**
Retaliation (Title VII)

24. Plaintiff incorporates by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

25. This is an action for damages arising out of retaliation in employment. At all times relevant herein, Plaintiff's job performance was always satisfactory or better.

26. Defendant, as alleged herein, retaliated against Plaintiff for making complaints of discrimination and harassment as follows: refusal to hire, denial of promotions and pay, denial of raises, unwarranted disciplinary action, unwarranted negative performance appraisals, denial of training and assistance, denial of work hours, threats and intimidation, assignment of menial tasks, and harassment.

27. As a result of the retaliation as described herein, Plaintiff has been held up to great derision and embarrassment by her fellow coworkers, friends, and members of the community. Plaintiff has suffered emotional distress because Defendant has subjected her to retaliation because of her complaints of discrimination and harassment. Plaintiff is informed and believes that Defendant retaliated against her knowing that such retaliation would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proved at the time of trial.

28. Because of the wrongful acts of Defendant as alleged herein, Plaintiff has been and will be required to employ physicians to examine, treat and care for them and will incur additional medical and economic damages in an amount to be proven at the time of trial.

29. As a result of the wrongful conduct as described herein, Plaintiff has been denied employment, denied promotions, and denied raises. As a result, Plaintiff seeks an award of back pay, front pay, and injunctive relief, according to proof at the time of trial.

30. In doing the acts set forth above, Defendant acted intentionally, and with a conscious disregard of Plaintiff's right to equal employment opportunities regardless of her complaints. Defendant has acted, and continues to act, with a reckless disregard of its obligations under the law. The Defendant's conduct, as alleged herein, was and is despicable, malicious and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

**THIRD CLAIM FOR RELIEF**
Sex Discrimination (Title VII)

31. Plaintiff incorporates by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

32. This is an action for damages arising out of sex discrimination in employment. At all times relevant herein, Plaintiff's job performance was always satisfactory or better.

33. Defendant, as alleged herein, discriminated against Plaintiff as follows: denial of pay, unwarranted disciplinary action, wrongful termination, threats and intimidation, and harassment.

34. As a result of the sex discrimination as described herein, Plaintiff has been held up to great derision and embarrassment by her fellow coworkers, friends, and members of the community. Plaintiff has suffered emotional distress because Defendants have subjected her to disparate treatment on account of her sex – female. Plaintiff is informed and believes that Defendant discriminated against her knowing that such

discrimination would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proved at the time of trial.

35. Because of the wrongful acts of Defendants as alleged herein, Plaintiff has been and will be required to employ physicians to examine, treat and care for her and will incur additional medical and economic damages in an amount to be proven at the time of trial.

36. As a result of the wrongful conduct as described herein, Plaintiff has been denied employment, denied promotions, and denied raises. As a result, Plaintiff seeks an award of back pay, front pay, and injunctive relief, according to proof at time of trial.

37. In doing the acts set forth above, Defendant acted intentionally, and with a conscious disregard of Plaintiff's right to equal employment opportunities regardless of sex. Defendant has acted, and continues to act, with a reckless disregard of their obligations under the law. The Defendant's conduct, as alleged herein, was and is despicable, malicious and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

## DEMAND FOR JURY TRIAL

38. Plaintiff hereby requests a jury trial for all claims.

## PRAYER FOR RELIEF

39. WHEREFORE, Plaintiff Johnnetta Punch prays that the Court grant her the following relief:

A. Declaring that the acts and practices described in this Complaint are in violation of Title VII;

B. Enjoining and permanently restraining these violations of Title VII;

C. Directing the defendant to pay plaintiff actual and compensatory damages that she suffered, past and future;

D. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

E. Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

F. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

G. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

*/s/ Chukwudi Egbuonu\**
Chukwudi Egbuonu
State Bar No. 24081838
Federal I.D. No. 2365112
LAW OFFICE OF CHUKWUDI EGBUONU
4141 Southwest Freeway, Suite 390
Houston, Texas 77027
Phone: (713) 635-9488
Fax:    (832) 426-5792
chuck@celawoffice.com

\* ATTORNEY IN CHARGE FOR PLAINTIFF